IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN A. PLAVAN, PH.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Civil Action No. 05-1233 |
| | ) |
| PITTSBURGH LEADERSHIP FOUNDATION and JOHN STAHL-WERT, | ) |
| | ) |
| Defendants | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

## SYNOPSIS

Pending is Defendants' Motion for Summary Judgment relating to allegations of discrimination based on Plaintiff's sex with respect to compensation in violation of the Equal Pay Act, 29 U.S.C. §206(d)(1) ("EPA"), and in violation of the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.* ("PHRA"). (Docket No. 14). Plaintiff has filed a Brief in Opposition. (Docket No. 25). Defendants filed a Reply Brief. (Docket No. 32). Based on my opinion set forth below, said Motion is denied.

## I. BACKGROUND

1

Defendant, Pittsburgh Leadership Foundation ("PLF"), is a faith based, non-profit organization headquartered in Pittsburgh, Pennsylvania, which provides start-up funding and other support to various religious social service programs. Defendant, John Stahl-Wert, is the President and CEO of PLF. He became the President in 2001 and acquired the additional titled of CEO in 2003. Plaintiff, Karen A. Plavan, Ph.D., first became involved with PLF in 1982, when the PLF's program called the Coalition for Addictive Diseases became involved with an outreach program from QED Communications with which she was involved, called the Chemical People Institute. At that time, Reid Carpenter was the director of the Coalition for Addictive Diseases.

Between 1982 and 1989, Plaintiff was associated with the Coalition for Addictive Diseases as an unpaid volunteer. In 1989, she became a member of the Executive Committee of the Coalition for Addictive Diseases. Shortly thereafter, she successfully pushed for a change in the name of the organization to the Coalition for Leadership, Education and Advocacy for Recovery ("CLEAR"). The mission of CLEAR is to gather and connect the broad spectrum of alcohol, tobacco and other drug prevention, treatment and recovery efforts in the region in order to improve learning, support advocacy and impact.

Between 1989 and 1993, Plaintiff continued to volunteer her time and service to CLEAR. While she volunteered her time, Mr. Carpenter told her on many occasions that she should submit her expenses for reimbursement, but she declined. During that time, she was also a part-time professor at Penn State University. Plaintiff also

worked for a management consulting firm, Strategic Management.

Beginning in 1993, Plaintiff's duties with CLEAR expanded.  She trained staff, participated in staff meetings as a member of the Executive Committee, and counseled PLF staff for personal problems.  In 1994, Plaintiff accepted Mr. Carpenter's offer of a part-time consultancy position at PLF and she resigned her position at Strategic Management.  Plaintiff invoiced PLF for her services.

In or around 2001, Plaintiff took on more responsibilities with CLEAR.  She resigned her faculty position, and her took the full-time consultant position with PLF.  Her consultant fee doubled to $60,000.00.  Plaintiff was paid via an IRS form 1099.

Plaintiff's duties as a full time project director with CLEAR between 2001 and 2004, included writing periodic reports about CLEAR activities to the PLF Board of Directors; assisting in the writing of an unknown number of grant requests to seek funds for CLEAR; recruiting and managing volunteers of CLEAR; scheduling speakers for a conference each fall, and for a pastoral care conference each spring; and organize and oversee the Shadyside Hospital Screening Project.  Plaintiff also did consulting or family intervention as needed.  In February of 2004, Defendant, Stahl-Wert made the decision to discontinue Plaintiff's relationship with PLF.

Prior to becoming a project director, in or around 1999, Plaintiff authored a foreword to a book titled "New Light on Alcoholism."  In that foreword, Plaintiff identified herself as "Consultant, CLEAR, PLF."  Plaintiff acknowledges that prior to taking the full-time position with CLEAR, Plaintiff was a consultant.

The first project director of CLEAR, the Reverend David Else, was a consultant, and not an employee of PLF. His last year of service in that capacity was in 1999, when he received $20,800.00 in compensation. That was the highest amount that Reverend Else ever received in his ten years in that position.

In addition to CLEAR, PLF sponsored a variety of other programs that were religious and/or social service in nature. Each of these programs was headed by a director who was either a full time employee of PLF, a part time employee of PLF, a paid consultant, or an unpaid volunteer.

Occasionally, a program would go unfunded for years and them reappear due to a successful grant. An example of this is the program called Tempering the Valley of Steel.

In addition to CLEAR, among the programs that were offered by PLF during the years in question was a prison ministry program that brought people of faith to the Allegheny County prison. This program was directed by Lorraine Williams.

The Pittsburgh Youth Network ("PYN") was another program sponsored by PLF. It is a programed directed to the youth of the Pittsburgh area. The PYN is a catalyst for bringing together a diverse coalition of approximately 200 youth workers, serving in churches and youth-serving agencies in the area. The mission of the PYN is to encourage and unite the Church of Pittsburgh to reach kids with the love of Jesus and develop a new generation of Christ-centered leaders. Its primary activity each year is to organize a camping experience in the Laurel Mountains for city youth. The primary role of the project director of the PYN is to interact with youth,

coordinate the efforts of the various churches and agencies, and organized the annual camping experience each year. This program was headed first by Tim Smith, and later by Brad Henderson.

The Storehouse was another program sponsored by PLF. This program provides direct service to non-profit agencies. It collects and redistributes supplies to these agencies at little or no cost, to allow them to serve others. This is done by acquiring surplus inventory of durable and non-perishable goods from various manufacturers, and making them available to non-profits. The Storehouse is called "Pittsburgh's Costco for Non-Profits." The primary role of the project director of the Storehouse is to call on corporate sponsors and seek goods that are useful, and which might be excess inventory for the donor. The project director must also be able to coordinate the efforts of the volunteers of the staff at the Storehouse facility, and coordinate the distribution of goods. During the years 2002 to the present, the project director of the Storehouse has been Justin Brown.

Pending is a Motion for Summary Judgment filed by Defendants. (Docket No. 14). Plaintiff opposes the same. (Docket No. 25). Defendants filed a Reply thereto. (Docket No. 32). The issues are now ripe for review.

## II. **LEGAL ANALYSIS**

### A. **Legal Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id*. at 324. Summary judgment must therefore be

6

granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

## B. <u>Plaintiff's PHRA Claim</u>[1]

To establish a *prima facie* case of discriminatory pay, Plaintiff must prove, *inter alia*, that she was performing work substantially equal to that of male employees who were compensated at higher rates than Plaintiff. *Watson v. Eastman Kodak*, 235 F.3d 851, 857-58 (3d Cir. 2000); *Aman v. Cort Furniture Rental Corp*, 85 F.3d 1074, 087 (3d Cir. 1996); *Williams v. URS Corp.* 124 Fed.Appx. 97, *99 (3d Cir. 2005). Defendants' main argument is that Plaintiff cannot establish "a pattern of more favorably treated, but similarly situated comparators" because the comparators identified by Plaintiff are not similarly situated. (Docket No. 15, p. 4). Specifically, Defendants submit that Plaintiff is not similarly situated to Mr. Brown or Mr. Henderson because: 1) she was an independent contractor, whereas Mr. Brown and Mr. Henderson were employees (Docket No. 15, pp. 4-5); 2) Plaintiff's duties and responsibilities as project director of CLEAR differed from the duties and responsibilities of Mr. Brown as project director of PYN, and Mr. Henderson as project director of Storehouse (Docket No. 15, pp. 5-8); and 3) Plaintiff's "selective identification of two male project directors out of six or more people in that

---

[1] Plaintiff's PHRA claims are analyzed under the same framework as Title VII. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 919 (3d Cir.1997) (applying Title VII analysis to PHRA claim).

7

classification cannot support a claim of discriminatory intent." (Docket No. 15, p. 8).

With regard to the first argument, there is no question that Mr. Brown and Mr. Henderson were employees of PLF. Rather, the dispute is over whether Plaintiff was an employee or an independent contractor.

> In ascertaining whether a person is an employee or an independent contractor, the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged....
>
> The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result.

*Green v. Independent Oil Co.*, 414 Pa. 477, 201 A.2d 207, 210 (1964) (citations omitted).

Defendants argue that Plaintiff was hired as a paid consultant, she received an IRS form 1099 each year, and she held herself out as a consultant for PLF on her business cards and in a foreword to a book authored by Plaintiff in 1999.[2] (Docket No. 15, pp. 4-5). There is no question that Plaintiff received a 1099 each year, and that she had business cards that identified her as a "consultant." In every other respect, however, Plaintiff was an employee. (Docket No. 25, p. 5). In support of her position, Plaintiff states that she held the same job title as both Mr. Brown and Mr. Henderson, a program director for PLF. Others at PLF perceived her to be an

---

[2]Since the foreword was written at a time prior to her position as project director, this argument is without merit.

employee no different from any other project director. (Docket No. 27, Ex. 4, ¶5). Plaintiff was at meetings and at PLF functions and was listed in the PLF handbook as an employee. *Id.* PLF provided Plaintiff with a large office, an administrative assistant, provided her with office supplies, paid for her parking, business and travel expenses, "expected Plaintiff to conduct staff training and consulting sessions, expected Plaintiff to prepare vision and mission statements for PLF; expected Plaintiff to develop a written strategic plan for the CLEAR project; published Plaintiff's photo in PLF promotional materials...; required Plaintiff to submit reports to the PLF Board of Directors; and paid Plaintiff on a regular pay cycle along with other PLF employees." (Docket No. 25, p. 6). Viewing the evidence in the light most favorable to the non-moving party, I find there is a genuine issue over the work to be completed and the manner in which it was to be performed, such that summary judgment on this basis is not warranted.

Defendants next suggest that Plaintiff's PHRA claim cannot go forward because the duties and responsibilities of Plaintiff as project director of CLEAR were entirely different from the duties and responsibilities of Mr. Brown as project director of PYN and Mr. Henderson as project director of the Storehouse, such that Plaintiff has not identified the proper comparators. (Docket No. 15, pp. 6-8). Viewing the evidence in the light most favorable to the non-moving party, I find that Plaintiff has come forward with evidence that creates a genuine issue of material fact that Brown and Henderson were comparators. For example, all three persons, Plaintiff, Brown, and Henderson were project directors for PLF. They all

had supervisory duties managing their project. They all reported to the same person. (Docket No. 27, Ex. 4, ¶2). Moreover, there is evidence, contrary to Defendants' position, that the project directors had similar duties and responsibilities such as leadership to connect with others in the community. (Docket No. 26, Ex. 2, ¶7). They were all responsible for recruiting volunteers, supervising staff, organizing meetings and conferences, and were responsible for writing Board reports. (Docket No. 26, Ex. 2, ¶10). They all had the same mission - "to serve as an intermediary and/or convener of those who were working with 'the least, the last the lost....'" (Docket No. 27, Ex. 4, ¶6). Consequently, I find there is a genuine issue that Brown and Henderson were comparators. *See, Monaco v. Am. General Assur. Co.,* 359 F.3d 296, 305 (3d Cir. 2004). Thus, summary judgment is not warranted.

Finally, Defendants argue that Plaintiff's PHRA claim must fail because she selectively chose two male project directors "out of six or more people in that classification," and when you consider all of the project directors there is no evidence of discriminatory intent. (Docket No. 15, p. 8). The six other comparators identified by Defendants are: Lorraine Williams, Tim Smith, Marilyn Mulvihill, Jace Ransom, Pat Bukowski, and Lisa Thorpe-Vaughn. *Id.* at 9-10. Defendants do not, however, give me any evidence, other than their salaries, as to why the other project directors are comparators. Moreover, I note that Defendants have not indicated why they have also decided to leave out other employees with the title of project director as comparators, such as Dick Johnson, John Stahl-Wert, and Frank

10

Melnyk, when their titles, at least in part are project directors. *Compare,* Docket No. 15, pp. 9-10; *with* Docket No. 28, Ex. 7 (the "Chart" prepared by the accounting department of PLF). As a result, I cannot engage in an analysis of whether the other project directors are comparators. Consequently, I find that summary judgment is not warranted.[3]

## C. **Plaintiff's EPA Claim**

The EPA prohibits employers from paying different wages to employees of the opposite sex where the employees perform "equal" work.[4] 29 U.S.C. §206(d)(1). There are three elements to a claim under the Equal Pay Act: 1) the defendant employed the plaintiff and a male employee in jobs requiring substantially equal skill, effort and responsibility; 2) the two jobs were performed under similar working conditions; and 3) the plaintiff was paid a lower wage than the male employee doing

---

[3]In their Reply Brief, Defendants argue that I should not consider the statement by Ms. Thorpe-Vaughn, and echoed by Plaintiff, that "I believe that my pay disparity, as well as that of Karen Plavan and Marilyn Mulvihill, was due to PLF's perception of women as less valuable to the organization." (Docket No. 32, p. 3-4, *citing,* Docket No. 27, Ex. 4, ¶10). Since I did not rely on this information in reaching my conclusion, I find Defendants' argument to be moot.

[4]The EPA provides, in pertinent part, as follows:

(d)   Prohibition of sex discrimination

(1)   No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. §206(d)(1).

substantially equal work. *Corning Glass Works*, 417 U.S. at 195.  Defendants basically argue that because Plaintiff cannot show that her work was "equal" to Mr. Brown or Mr. Henderson, her EPA claim must fail.  (Docket No. 15, pp. 11-15).

> The crucial finding on the equal work issue is whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different.... *Given the fact intensive nature of the inquiry, summary judgment will often be inappropriate.*

*Brobst v. Columbus Services Intern.,* 761 F.2d 148, 156 (3d Cir.1985) (emphasis added and citations omitted).

Based on my analysis under Plaintiff's PHRA claim, and viewing the facts in the light most favorable to Plaintiff, I find that there is a genuine issue of material fact as to whether there is a common core of tasks between the project director job held by Plaintiff and the project director positions held by Mr. Brown and Mr. Henderson.  As a result, I find there is a genuine issue as to whether the jobs are "substantially equal."  Consequently, summary judgment is not appropriate.

## ORDER OF COURT

**AND NOW,** this  **30th**  day of January, 2007, after careful consideration of the parties submissions, it is ordered that Defendants' Motion for Summary Judgment (Docket No. 14) is denied.

It is further Ordered that a Pre-trial Conference for the above captioned matter is scheduled for Thursday, February 8, 2007, at 11:45 A.M., before the undersigned on the Third Floor, Suite 3280 of the U.S. Post Office & Courthouse.

Counsel shall have settlement authority and parties should be either present or available by telephone.

Position statements are to be faxed no later than three (3) days prior to the Pre-trial Conference.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge